# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 21-0059V

| | |
|---|---|
| BROOKE BIANCUCCI,<br><br>　　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br><br>Filed: November 10, 2025 |

*Maximillian J. Muller, Muller Brazil, LLP, Dresher, PA*, for Petitioner.

*Felicia Langel, U.S. Department of Justice, Washington, DC*, for Respondent.

**DECISION DISMISSING PETITION**[1]

　　　　On January 5, 2021, Brooke Biancucci filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that as a result of an influenza ("flu") vaccine she received on September 25, 2019, she suffered a left shoulder injury related to vaccine administration ("SIRVA") as defined by the Vaccine Injury Table (the "Table"). Petition (ECF No. 1) at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means this Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

On January 10, 2023, Respondent filed a Rule 4(c) Report detailing its entitlement opposition and grounds for so maintaining. Respondent's Report dated January 10, 2023 (ECF No. 31) ("Report"). Specifically, Respondent argued (among other things) that Petitioner could not meet the statutory severity requirement, since there was a treatment gap of approximately 15 months. *Id*. at 4. During this interval Petitioner repeatedly sought medical care, but did not complain of shoulder problems (and attributed visits to some treaters in this period to left foot surgery and pain in both knees). *Id*. at 3–4.

Thereafter, I set a briefing schedule for Petitioner to show cause why the claim should not be dismissed given the severity issues, setting deadline for both sides to offer their position on the matter. Order to Show Cause, dated May 9, 2023 (Docket Entry Order). Both parties filed their briefs in accordance. Petitioner's brief, dated June 12, 2023 (ECF No. 33) ("Mot."); Respondent's brief, dated July 6, 2023 (ECF No. 34) ("Opp."). Petitioner did not opt to file a reply, and the matter is now fully briefed.

## I. Relevant Medical History

### 1. Medical History

On September 25, 2019, Ms. Biancucci (47-years old) saw her primary care provider ("PCP") Gregory Mullen, M.D., for a wellness exam. Petitioner's Exhibit ("Ex.") Ex. 7 at 77. She complained of fatigue and insomnia, and she received a seasonal flu vaccine into her left deltoid. Ex. 4; Ex. 7 at 77, 79. The vaccination record states that Petitioner received this vaccine in her left deltoid. Ex. 4 at 1. Petitioner had no history of left shoulder pain. *See generally* Ex. 3.

On October 4, 2019, Ms. Biancucci spoke by telephone to a nurse in her PCP practice and complained of pain and limited range of motion ("ROM") in her left arm that began one to two days after her vaccination. Ex. 7 at 75. Petitioner added that the pain extended from her shoulder to her elbow, she had difficulty sleeping, and ibuprofen was "somewhat relieving." *Id*. at 76.

Later that day, Ms. Biancucci went to UHS Clinics Urgent Care and was seen by Jessica Brooks, P.A. Ex. 5 at 16. Petitioner complained of constant 6/10 pain that radiated down her left arm but had improved from a week ago. *Id*. On exam, PA Brooks noted that Petitioner's left shoulder was non-tender to palpation, but there was moderately reduced ROM. *Id*. at 18. PA Brooks diagnosed Ms. Biancucci with "[p]ossible injury to [the] axillary nerve," administered Toradol intramuscularly, and prescribed Naproxen 500mg. *Id*. at 18–19. PA Brooks ordered an X-ray of Petitioner's left shoulder (which was normal, Ex. 5 at

21), and recommended ice/heat, stretching, and a referral to orthopedics if the pain did not improve. *Id*.

On October 10, 2019, Ms. Biancucci saw orthopedist Ryan Lowrie, P.A., at UHS Orthopedic Center for a consultation. Ex. 8 at 119. Petitioner wrote on her medical intake form that, after the flu shot, she had "immediate pain through [her] left arm [and] lack of use since (without pain)." *Id*. at 131. At this visit, Petitioner complained of 9/10 left shoulder pain. *Id*. PA Lowrie noted left shoulder tenderness and reduced strength. *Id*. at 118, 119. PA Lowrie reviewed Petitioner's X-ray, ordered a left shoulder MRI, and prescribed ibuprofen 800mg alternating with Tylenol. *Id*. at 118.

On October 11, 2019, Ms. Biancucci underwent an MRI of the left shoulder which showed fluid in the subacromial subdeltoid bursa, consistent with bursitis, hyperintense signal in the distal supraspinatus tendon, due to tendonitis, and subscapularis tendinosis. Ex. 8 at 124-125.

On October 17, 2019, Ms. Biancucci followed up with PA Lowrie, who noted that Petitioner "[s]till ha[d] quite a bit of pain, left shoulder, all from a flu shot a number of weeks ago." Ex. 7 at 73. On exam, PA Lowrie noted mild pain, "adequate" ROM, and impingement with positive Hawkins and Neer tests. Id. PA Lowrie reviewed Petitioner's MRI, and he diagnosed her with left shoulder bursitis and rotator cuff tendinosis. *Id*. PA Lowrie prescribed a Medrol Dosepak, and he referred petitioner to an orthopedic surgeon in the same practice. *Id*.

On October 28, 2019 (now 33 days after vaccination), Ms. Biancucci saw orthopedic surgeon David Gallagher, M.D. Ex. 8 at 97. Petitioner complained of 5/10 left shoulder pain that was worse at night and had persisted despite oral steroids and home exercises. *Id*. at 96, 97. On exam, Dr. Gallagher noted reduced strength and ROM and positive impingement. *Id*. Dr. Gallagher reviewed Petitioner's MRI, and he diagnosed her with "[s]ubacromial bursitis and inflammatory reaction secondary to subacromial flu injection, most likely." *Id*. at 96. Dr. Gallagher administered a cortisone injection into Petitioner's left shoulder, and he recommended that she follow up as needed. *Id*.

Over the next 15 months, Ms. Biancucci was seen at least seven separate times with several medical providers, but no records include reports or complaints of left shoulder pain. *See e.g.*, Ex. 7 at 54–58 (On December 16, 2019, Petitioner was seen at her PCP practice for a preoperative exam for left foot surgery); Ex. 3 at 10-11 (On February 11, 2020, Ms. Biancucci was seen by an orthopedist for right knee pain); Ex. 5 at 22-25 (On February 14, 2020, she was seen at Urgent Care for left leg pain); Ex. 3 at 7-8 (On March 12, 2020, Petitioner was seen by an orthopedist for left knee pain); Ex. 7

3

at 150-54 (On June 24, 2020, Ms. Biancucci was seen at the Emergency Department for a head laceration); Ex. 7 at 37-38 (On July 6, 2020, Petitioner was seen by her PCP for staple removal following the head laceration); Ex. 7 at 27-30( On November 25, 2020, she was seen at her PCP practice for an ingrown toenail on her right foot).

On February 12, 2021 - 15 months and 15 days from her last appointment for her left shoulder - Ms. Biancucci returned to PA Lowrie and complained of left shoulder "increased pain and decreased ROM." Ex. 8 at 50. Petitioner rated her pain at 2/10 and described it as intermittent and associated with "shoveling and excessive work around the house." *Id*. On exam, PA Lowrie noted that Ms. Biancucci had mild diffuse left shoulder pain and mildly positive impingement. *Id*. PA Lowrie diagnosed Petitioner with left rotator cuff tendinosis, and recommended a cortisone injection, which Petitioner declined. *Id*. at 50–51.

In her supplemental affidavit, filed on March 31, 2022, Ms. Biancucci stated that she had no prior left shoulder dysfunction and was very active. *Id*. at 1. She stated that experienced immediate pain following the vaccine, and the pain became unimaginable. *Id*. Petitioner explained that "36 days" after her flu vaccination, she "began to feel relief." Ex. 9 at 2. Petitioner claimed that she did not seek additional care for her left shoulder until February 12, 2021, because her physical inactivity during COVID "lockdown," and immediately thereafter, did not aggravate her injury. *Id*. She stated that she lived with the discomfort. *Id*. In January 2021, Petitioner stated that she began to experience increased levels of pain. She returned to see her orthopedist and was given additional treatment options. *Id*. Ms. Biancucci performed home exercises and eventually regained some function. *Id*. She continued to experience limitations with use of her left shoulder. *Id*.

## II.  Analysis

Petitioners not asserting a vaccine-related death or other injury requiring a surgical intervention and inpatient care must demonstrate that they suffered the residual effects or complications from their vaccine-related injury for more than six months. Section 11(c)(1)(D); *Cloer v. Sec'y of Health & Hum. Servs.*, 654 F.3d 1322, 1335 (Fed. Cir. 2011). Petitioners bear the burden of establishing this preponderantly. *Song v. Sec'y of Health & Hum. Servs.*, 31 Fed. Cl. 61, 65–66 (1994), *aff'd*, 41 F.3d 1520 (Fed. Cir. 1994). They cannot establish the length or ongoing nature of an injury solely through personal statements but rather must "submit supporting documentation which reasonably demonstrates that the alleged injury or its sequelae lasted more than six months . . ." *Black v. Sec'y of Health & Hum. Servs.*, 33 Fed. Cl. 546, 550 (1995), aff'd, 93 F.3d (Fed. Cir. 1996).

4

While even mild symptoms that do not require intensive medical care may satisfy the severity requirement, ongoing medical treatment for conditions unrelated to an alleged vaccine injury do not. *Compare Wyatt v. Sec'y of Health & Hum. Servs.*, No. 14-706V, 2018 WL 7017751, at *22–23 (Fed. Cl. Spec. Mstr. Dec. 17, 2018) (petitioner's post-vaccination GBS resolved within three months; subsequent ongoing medical treatment for upper respiratory and gastrointestinal infections did not satisfy six-month requirement), with *Herren v. Sec'y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (ongoing mild GBS symptoms that did not require active medical care nevertheless satisfied severity requirement).

Because Petitioner received her vaccine on September 25, 2019, and alleges immediate pain (or at least pain within the 48-hour Table timeframe for a SIRVA injury), severity must be established at least through March 25-27, 2020 (six months after onset). But as noted above, the record does not in the least establish that pain that is documented in late September/early October likely persisted into March 2020. On the contrary—the record indicates that Ms. Biancucci received *nearly completely relief* 36 days after vaccination, and then the record is almost silent on the question for more than 15 months, with Petitioner seeking treatment for other, unrelated issues which she does not attribute to the vaccine (for example, a foot surgery and knee pain), and which otherwise could not be construed as associated.

Although Ms. Biancucci was not seen again until February 2021, she claims there is evidence of her ongoing left shoulder injury from this time forward, and that she had left shoulder pain the entire time. Mot. at 8. Specifically, she argues that,

> [t]his record does not indicate any new injury to the shoulder or offer any indication that her shoulder pain resolved during the previous 15 months. Rather, the record indicates a continuation of her initial injury, pain with household activities and intermittent symptoms. *Id*. While this is notable, it does not make up for the many visits made during the time without any complaints of left shoulder pain.

*Id*. The medical record does establish that she was seen once for left shoulder issues in February 2021. But the numerous medical visits Ms. Biancucci had during that 15-month gap for other unrelated medical symptoms (at least seven separate visits) undermine her claim of persistent injury. If Ms. Biancucci continued to experience left shoulder pain, she would have likely been seen sooner. The gap in the record is simply too long, and too silent, for me to conclude that six months of severity is met in this case.

5

As Respondent noted, the facts in this case are very similar to *Adkins v. Sec'y of Health & Human Servs*, No. 20-813V, 2022 WL 1134998 (Fed. Cl. Spec. Mstr. Mar. 24, 2022). In that case, I found that a petitioner did not meet the six-month severity requirement where there was a 17-month gap between her complaints of shoulder pain, and during which time she sought regular medical care for unrelated issues. *Id*. at *3. Here, as I articulated in the *Adkins* case, the 15-month gap in the record during which time Ms. Biancucci did not seek medical care for her allegedly persistent left shoulder pain "[was] simply too long, and too silent" for her claim to meet the six-month severity requirement. Thus, I find that there is insufficient evidence to support a finding that Ms. Biancucci suffered the residual effects or complications of her alleged left-sided SIRVA for more than six months after administration of the flu vaccine.

## Conclusion

Based on the entire record in this case, I find that Petitioner has failed to prove by preponderant evidence that her injury or its residual effects lasted more than six months. Accordingly, Petitioner has not established entitlement to an award of damages (under the Table or causation-in-fact version of the claim), and I must DISMISS the claim.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of the Court **SHALL ENTER JUDGMENT** in accordance with the terms of this Decision.[3]

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master

---

[3] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by each filing (either jointly or separately) a notice renouncing their right to seek review.